Stanley C. Wood v. Commissioner.
Wood v. Commissioner
Docket No. 2919-66.
United States Tax Court
T.C. Memo 1968-112; 1968 Tax Ct. Memo LEXIS 186; 27 T.C.M. (CCH) 540; T.C.M. (RIA) 68112; June 11, 1968. Filed *186 Julie M. Reardon, for the petitioner. Marvin T. Scott, for the respondent. Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $1,117.74 in income tax of the petitioner for 1961. The issue for decision is whether the Commissioner erred in including $5,179.55 in the petitioner's income for 1961 as "Wages increased." 541 Findings of Fact The petitioner filed an individual income tax return for 1961 with the director of internal revenue for the district of Denver, Colorado. He resided in Colorado at the time he filed the petition in this case. The capital stock of Kalispell Bottling Co., Inc., incorporated in Montana, was owned one share each by the petitioner, his father-in-law, F. H. Parkerson, and his mother-in-law, Gladys Parkerson, until September 1959 when the petitioner gave his one share to his wife Sharon. The petitioner paid nothing for his share. He and Sharon, her parents only child, were married in 1955. They had two children, sons. Sharon died on October 27, 1961 from an overdose of sleeping pills. The petitioner was an employee of the company until he left Montana in September 1959 and was again employed for about *187 six months in 1960. He left each time on account of personal differences with his wife's parents. He received wages and "advance wages" for the periods during which he was employed by the company. He received no wages from the company and performed no services for the company after July 1960. Sharon also received some wages from the company. The Commissioner in the deficiency notice stated that the taxable income disclosed by the 1961 return was $4,089.89 and explained further as follows: Unallowable deductions and additional income: (a) Wages increased…$5,179.55 * * * EXPLANATION OF ADJUSTMENTS (a) It is determined that you realized income of $5,179.55 from forgiveness of indebtedness by the Kalispel [sic] Bottling Co. for advances made to you by the company while you were an employee-shareholder. Computation is as follows: Total advances made (1958, 1959, 1960)
$11,929.55
Less:
Gross wages reported in 1958
$3,300.00
Gross wages reported in 1959
650.00
Gross wages reported in 1960 1,800.00
5,750.00
Difference
$ 6,179.55
Less: Advances repaid 1,000.00
Amount forgiven in 1961
$ 5,179.55
The petitioner reported on his returns, *188 as income from the company, wages of $1,500 for 1958, $3,315 for 1959 and $1,800 for 1960, and attached to each return Forms W-2 showing those same amounts. He admits that he received from the company during those years some other amounts which he did not report as income. The record does not show what those other amounts were, why they were paid to him, that they were taxable income or that they were indebtedness which he owed the company. The petitioner entered into no notes or agreements of any kind to repay those amounts and no interest on the amounts was ever requested of or paid by him. The company, after July 1960, has no way of collecting any of those amounts from the petitioner. He had not repaid any of those amounts but he gave his father-in-law $1,000 at the latter's request in 1959. The petitioner made no payment to the company. The company used a fiscal year ended June 30. The petitioner in January 1962 received a Form W-2 for 1961 from the company showing total wages of $5,635.17, F.I.C.A. employee tax withheld $144.00 and no federal income tax withheld. The company claimed a salary deduction on its return based on the W-2 form. Sharon's parents, since her death, *189 have carried on litigation against the petitioner in an effort to obtain custody of her children or visitation rights. The petitioner received a telegram dated October 24, 1961 containing the following words: Wire two thousand dollars at once for wages paid by us for care of your children Steven and Wade Woods for past year. Otherwise an additional seventeen hundred dollars for government. F H and Glady Parkerson Opinion MURDOCK, Judge: The Commissioner has determined that the petitioner realized income of $5,179.55 in 1961 from "Wages increased" and then in his "Explanation" he describes this same amount as "forgiveness of indebtedness" which resulted from "advances" made to the petitioner while he was an "employee-shareholder" of the company in 1958, 1959 and 1960. In his computation of the $5,179.55 the Commissioner subtracts, from "Total advances," "Gross wages reported" of $5,750, being the sum of $3,300 for 1958, $650 for 1959 and $1,800 for 1960. The wages the petitioner actually reported for those years were $1,500 for 1958, $3,315 for 1959 and $1,800 for 1960 or a total of $6,615. Thus, had the Commissioner used the correct amounts, his additional income 542 amount *190 would have been $4,314.55 instead of $5,179.55. Just what burden of proof this determination imposes upon the petitioner is not too clear. The petitioner did not receive any wages from the bottling company in 1961 and was not a shareholder or employee of the company in that year. He had given his stock to his wife in 1959. She died on October 27, 1961 while living with her parents. The petitioner admits that he received, while employed by the company, some amounts which he did not report as income. If the amounts here in controversy were wages, they were taxable in 1958, 1959 and 1960 when received and not in 1961. The company never advised the petitioner that he was indebted to it or that any indebtedness owed to it by him had been forgiven. He never gave the company any evidence of any indebtedness owing by him to the company and never paid or was asked to pay any interest on indebtedness to the company. The company, in 1961, had no way of collecting any amount from the petitioner. The evidence does not show that the company ever took any action in 1961 or at any other time to forgive any indebtedness owing it by the petitioner or that it ever advised the petitioner that any *191 such action had been taken. It sent him a W-2 form in January 1962 stating that it had paid him $5,635.17 as "wages" in 1961 but that was untrue and furthermore wages are not an "indebtedness" when received. The Commissioner did not call any officer of the company as a witness but he called a "public accountant" to prove the existence, the amount, the liability for and the forgiveness of the so-called indebtedness. This witness' testimony was not proper proof of any such facts. He came to the bottling company only at intervals and apparently made entries only in the ledger from daily entries made by others in other books of the company. The witness did not disclose that he had any firsthand knowledge of the existence, amount or nature of the amounts here in controversy or of any action taken by the company in respect to those amounts. The exhibits of book entries, their purpose and the amounts are confusing and not clear or convincing evidence supporting the Commissioner's determination. The petitioner had never seen those exhibits until they were offered in evidence herein. The cases cited by the Commissioner are distinguishable on their facts. The petitioner's father-in-law and *192 his mother-in-law were unfriendly, even hostile, to the petitioner. They threatened to hurt him taxwise. He had no way of obtaining evidence of what, if anything, their company had done to bring on the Commissioner's deficiency notice. The conclusion has been reached, in the light of all of the present circumstances, that the fair preponderance of the evidence supports the petitioner and the decision of the Court as to the "wages" is that they were not a part of his taxable income for 1961. Decision will be entered under Rule 50.